# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DONALD BRUBAKER,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:10-cv-437
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 8), and the Commissioner's response in opposition. (Doc. 13).

## PROCEDURAL BACKGROUND

Plaintiff Donald Brubaker was born in 1972 and was 36 years old at the time of the decision of the administrative law judge (ALJ). Plaintiff has a tenth grade education, which includes some special education courses. Plaintiff has past relevant work experience as a garbage truck driver, janitor, delivery driver, and muffler/brake repair person.

Plaintiff filed applications for DIB and SSI on March 28, 2007, alleging a disability onset date of June 15, 2006, due to knee problems and bulging discs in his neck.[1] (Tr. 109-11, 112-16, 132, 137). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 52-68).

---

[1]On appeal, plaintiff added post-surgery right elbow and right wrist condition to his impairments. (Tr. 154).

Plaintiff requested and was granted a de novo hearing before an ALJ. On February 10, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing held via video conference before ALJ Steven A. De Monbreum. (Tr. 25-45). A vocational expert (VE), Ann Marie Cash, also appeared and testified at the hearing. (Tr. 45-50).

On April 1, 2009, the ALJ issued a decision denying plaintiff's DIB and SSI applications. The ALJ determined that plaintiff suffers from the severe impairments of bilateral carpal tunnel syndrome and "ulnar nerve" with status post release surgery on the right; bilateral knee derangement with status post surgeries; mild degenerative disc disease; borderline intellectual functioning; dysthymic disorder; somatoform disorder; and obesity. (Tr. 12). However, the ALJ determined that such impairments do not alone or in combination meet or equal the criteria of an impairment in the Listing of Impairments. (*Id.*). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to perform a reduced range of light work. (Tr. 14). Plaintiff can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours total in an 8-hour workday; and sit for 6 hours total in an 8-hour workday. The ALJ found plaintiff is limited to tasks requiring no more than occasional kneeling, crouching, crawling, stooping, or bending; he can never climb ladders, ropes, or scaffolds; he can frequently climb ramps or stairs; he can frequently perform overhead reaching and all other reaching, handling, or fingering with the bilateral upper extremities; and he must avoid exposure to unprotected heights or hazardous machinery. (*Id.*). The ALJ also limited plaintiff to the following nonexertional limitations: He is restricted to simple, easily learned unskilled work; he can relate adequately to others within the demands of simple and routine work; he can work best without strict time or production pressures; and he would benefit from increased supervision support for more than minor changes

2

in job duties. (*Id.*). Using Medical-Vocational Rule 202.18 as a framework for decision-making, and relying on the testimony of the VE, the ALJ determined that plaintiff is unable to perform any past relevant work. (Tr. 20). The ALJ found that plaintiff is capable of performing a significant number of jobs in the national economy, including jobs as a driver, laundry worker and office machine operator. (*Id.*). Consequently, the ALJ concluded that plaintiff is not disabled under the Act and is therefore not entitled to disability benefits. (*Id.*).

The Appeals Council denied plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified at the ALJ hearing that he last worked about two to three years prior to the hearing as a garbage man. (Tr. 26). He stopped working because he was unable to perform his job duties. (*Id.*). At the time of the hearing, plaintiff performed a job collecting sewer samples in a "Work for Welfare" program. (Tr. 27-30). Plaintiff testified that he had been cleared for work by a doctor who was substituting for his regular physician and who was unaware of his medical history. (Tr. 38).

Plaintiff testified that he cannot work due to pain in his hands and knees. (Tr. 36-37). He stated he can "hardly walk" because of the pain and estimated that he can walk about two blocks if he walks slowly. (Tr. 36-38). He can stand about 20 minutes at a time. (Tr. 38). He had two surgeries on the left knee, but he claims the surgeries actually made his condition worse. (Tr. 37). He uses hot baths and ice packs to relieve the pain. (*Id.*). He has not had surgery on the right knee because the surgery on the left knee did not help. (*Id.*). A knee replacement has been

3

suggested, but he is too young for that surgery. (Tr. 38). Plaintiff estimated he can sit for about an hour before he must get up and move. (Tr. 43).

Plaintiff further testified he has trouble using his hands. (Tr. 36). He stated that his hands are always swollen. (*Id.*). He testified that he had carpal tunnel and ulnar nerve surgery on the right hand, but it did not help his condition. (Tr. 39). He still has numbness in his hand and cannot hold objects. (*Id.*). He is right-handed, and his right hand is worse than the left. (*Id.*).

Plaintiff also testified that he suffers from a pinched nerve in his neck. (Tr. 40). If he tries to lift anything, it hurts his neck. (*Id.*). He went to physical therapy for a month or two, but it did not help. (Tr. 41). Plaintiff has trouble sleeping because of his neck and knee pain. (Tr. 37, 41). He sleeps for a couple of hours at a time and is then up for about an hour. (Tr. 41).

Plaintiff testified that he has difficulty with reading comprehension and writing. (Tr. 36). He suffers from depression, and he is always tense and nervous. (Tr. 39-40). He told his physician, Dr. Davis, that he was depressed, but he refuses to take medication for his depression because he has seen other people suffer side effects, such as sleepiness and irritability. (Tr. 39).

As to his daily activities, plaintiff testified that he spends time with his children, attends his children's sporting events, washes clothes, and fixes his meals. (Tr. 41-45). He drives, but he has no handicap parking tag. (Tr. 43-44).

## MEDICAL EVIDENCE

There is medical evidence in the record concerning both mental and physical limitations of plaintiff. However, because plaintiff focuses on alleged errors by the ALJ pertaining to his physical impairments, the Court has summarized the evidence only as to those impairments. The

Court will reference the evidence regarding plaintiff's mental limitations where pertinent to the Court's discussion.

**Knee impairments**

On January 10, 2001, plaintiff was seen by orthopedic surgeon Dr. Kyle R. Hegg, M.D., after he injured his right knee. (Tr. 192-95). Dr. Hegg diagnosed a grade 1 to 2 MCL (medial collateral ligament) sprain and prescribed physical therapy. Plaintiff was subsequently treated by Dr. Hegg for knee pain beginning in October 2006. (Tr. 242-53). An MRI taken of plaintiff's left knee in December 2006 showed a horizontal tear of the medial meniscus and degenerative changes medially. (Tr. 224, 242). Dr. Hegg performed arthroscopic surgery on plaintiff's left knee on January 15, 2007. (Tr. 210-11).

Plaintiff attended 11 sessions of physical therapy post-surgery. When he was released from physical therapy in February 2007, he reported there was some improvement in his range of motion and strength compared to his initial visit, but his pain level had not improved. (Tr. 255-56).

Plaintiff had several post-operation follow-up visits with Dr. Hegg. (Tr. 232-41). In February 2007, Dr. Hegg discussed plaintiff's weight with him and how it affected his ability to resume activity and recover. (Tr. 234). At the June 6, 2007 office visit, plaintiff reported that his knee was tender all of the time and he could walk only one block. (Tr. 232). Dr. Hegg reported in March and June 2007 that he found minimal tenderness around the anteromedial knee and some crepitus, but plaintiff had a normal gait, full range of motion, no effusion, and normal stability, and his neurological exam was normal. (Tr. 232, 234, 236).

An MRI of the right knee taken on February 21, 2007, showed a large horizontal cleavage tear of the medial meniscus.  (Tr. 220, 234).  At the March 23, 2007 office visit, plaintiff told Dr. Hegg that he wanted to spend more time recovering from the left knee surgery before he considered surgery on the right knee.  (Tr. 234-35).

In August 2008, plaintiff complained of left leg pain around the joints on both sides.  The attending physician diagnosed knee joint pain.  (Tr. 450-51).  X-rays of plaintiff's left knee revealed mild joint space loss medially but no other bone or joint abnormality.  (Tr. 448-49).

**Back impairment**

Plaintiff went to the emergency room at King's Daughters Medical Center on October 12, 2006, with complaints of low back pain.  (Tr. 314-17).  He was diagnosed with acute lumbar strain.  He was seen in October 2006 with left flank pain.  (Tr. 298).  Plaintiff was diagnosed with acute left rib contusion with muscle sprain.  (Tr. 299).  Dr. Jason Hudak, M.D., diagnosed plaintiff with low back pain in September 2007.  (Tr. 463).  Plaintiff was taking  Skelaxin for the pain, which Dr. Hudak reported was controlled.  (*Id.*).

In December 2007, plaintiff complained of lower back pain to his treating physician, Dr. Scott Davis, M.D.  (Tr. 460-62).  Dr. Davis continued plaintiff on medication for the pain and prescribed physical and occupational therapy.  In January 2008, when plaintiff was released from physical therapy following surgery on his elbow and wrist, plaintiff reported that his back had less soreness and discomfort.  (Tr. 429).  In October and November 2008, Dr. Davis reported that plaintiff's complaints included lower back pain.  (Tr. 439-444).  Plaintiff was taking medication for the pain and performing home exercises and stretching.  In November 2008, plaintiff reported to Dr. Davis that he continued to work.  (Tr. 439).

6

**Arm and neck impairments**

Plaintiff injured his right elbow on February 5, 2004, when he fell from a garbage truck while working. (Tr. 188, 190). He saw orthopedic surgeon Earl J. Foster, M.D., who diagnosed a radial head fracture, right. He was treated with a long-arm splint.

In September 2006, plaintiff was seen by Dr. Hudak with complaints of knee and back pain, as well as arm pain extending to the neck with numbness and tingling. (Tr. 466-69). A cervical spine MRI showed some mild degenerative changes with no acute disc herniation. (Tr. 483). Plaintiff was prescribed medications. (Tr. 466).

Plaintiff saw David Weinsweig, M.D., on May 14, 2007, for chronic posterior cervical pain going into the right trapezius area and down the arm into the hand with numbness and tingling diffusely in the hand. (Tr. 414-15). Plaintiff complained about his hand going numb "pretty much all the time." (Tr. 414). Plaintiff denied any coordination problems other than limping because of his knee. Examination revealed plaintiff had a normal gait; his motor strength was grossly strong throughout his upper and lower extremities; his sensation was intact; his reflexes were equal; and there was no Hoffmann's sign, no ankle clonus and no evidence of spasticity or myelopathy. According to Dr. Weinsweig, plaintiff suffered from radicular pain. His MRI showed mild to moderate disc disease, and specifically a bulging disc at C/5-6, but the MRI results were not "overly severe." (*Id.*). Dr. Weinsweig prescribed physical therapy and cervical traction. He ordered an EMG/nerve conduction study of the right upper extremity as well as a bone scan and flexion/extension cervical x-rays.

Nerve conduction studies on plaintiff's right arm showed mild carpal tunnel syndrome and mild right ulnar neuropathy. (Tr. 403, 409-10). A whole body bone scan was unremarkable as to the neck. (Tr. 403, 411-12). A cervical spine x-ray was normal. (Tr. 413).

In July 2007, plaintiff reported to Dr. Weinsweig that both his neck and right arm bothered him. (Tr. 403). Dr. Weinsweig recommended surgery for the ulnar nerve and carpal tunnel. He did not believe the surgery would help the neck pain very much. Dr. Weinsweig noted that plaintiff had previously attended physical therapy sessions and claimed they did not help as much as he would have liked. He suggested plaintiff try a pain clinic, but plaintiff refused.

On August 2, 2007, plaintiff underwent a right carpal tunnel release and right ulnar nerve release with subcutaneous transposition. (Tr. 380-81). On August 28, 2007, plaintiff presented to the emergency room complaining of lingering right arm and elbow pain. (Tr. 293-97). He was prescribed medication. (Tr. 297). Plaintiff presented to the emergency room again the following month for right arm pain. (Tr. 374-376). He had full range of motion, was neurovascularly intact, and his right wrist incision had healed well. The emergency room physician diagnosed cellulitis secondary to surgery. (Tr. 376).

In October 2007, plaintiff attended physical therapy. (Tr. 392-95). He complained of continued problems with his grip. (Tr. 395). By November 2007, plaintiff had reached 80% of his physical therapy goals with respect to his right arm and hand. (Tr. 422-23). He reported improvement in his pain level, range of motion, and elbow strength, and he was able to grip and do light activities such as washing dishes. (Tr. 419-20, 422). That same month, Dr. Weinsweig noted that plaintiff was involved in physical therapy and seemed to be improving. He was still

somewhat tender about the elbow. Dr. Weinsweig further noted that plaintiff had not worked since June of 2006, and it appeared that he did not plan on returning to work. (Tr. 436).

Plaintiff was discharged from physical therapy in January 2008. He reported some discomfort with his hand but reported that his back had less soreness and discomfort. (Tr. 429-31).

In May 2008, plaintiff complained of increased numbness and tingling in his left hand. (Tr. 452-54). Nerve conduction studies were performed on plaintiff's left arm in August 2008, which revealed mild left carpal tunnel syndrome and moderate left ulnar neuropathy. (Tr. 445). He was diagnosed with cubital tunnel syndrome of the left arm. (Tr. 450-51). In October and November 2008, Dr. Davis reported that plaintiff's complaints included left hand pain with continued numbness and tingling. Plaintiff refused to undergo surgery on the left hand because he felt surgery on his right wrist had not helped. (Tr. 439-441, 442-44). Dr. Davis diagnosed ulnar entrapment and carpal tunnel based on EMG results and prescribed a wrist splint. (Tr. 444).

### State agency physician RFC assessments

In July 2007, a state agency physician, Dr. Maria Congbalay, M.D., reviewed the file and completed an RFC assessment. (Tr. 283-90). Dr. Congbalay opined that plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently; he could stand/walk and sit for six of eight hours a day; he could frequently climb ramps and stairs; he could never climb ladders, ropes or scaffolds; he could only occasionally kneel, crouch and crawl; and he should avoid hazards such as heights and moving machinery.

Dr. Diane Manos, M.D., a state agency physician, reviewed the medical records in September 2007. Dr. Manos did not affirm Dr. Congbalay's July 2007 assessment based on new medical evidence of record showing surgery had been performed and plaintiff had additional functional limitations. (Tr. 390). Dr. Manos completed a new RFC assessment in which she opined that plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; he could stand/walk and sit for 6 hours in an 8-hour workday; he could frequently balance and climb ramps or stairs; he could never climb ladders, ropes, or scaffolds; he could occasionally stoop, kneel, crouch and crawl; he is limited in his ability to reach; and he should avoid concentrated exposure to hazards. (Tr. 382-89).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case:

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1), 423. Establishment of a disability is contingent upon two

10

findings.  First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  Eligibility is dependent upon disability, income, and other financial resources.  20 C.F.R. § 416.202.  To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months.  Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.  20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations.  20 C.F.R. § 404.1520.  First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends.  Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments.  An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience.  *Farris v. Sec'y of HHS,* 773 F.2d 85, 90

11

(6th Cir. 1985) (citation omitted). *See also, Bowen v. Yuckert,* 482 U.S. 137 (1987). If the individual does not have a severe impairment, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.1525(a). Plaintiff's impairment need not precisely meet the criteria of the Listing in order to obtain benefits. It is sufficient if the impairment is medically equivalent to one in the Listing. 20 C.F.R. § 404.1520(d). To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. § 404.1526(a). The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(b). If the impairment meets or equals any within the Listing, the Commissioner renders a finding of disability without consideration of the individual's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 528 (6th Cir. 1981). Fourth, if the individual's impairments do not meet or equal any in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1053 (6th Cir. 1983); *Kirk,* 667 F.2d at 529.

12

Plaintiff has the burden of proof at the first four steps of the sequential evaluation process. *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *Wilson*, 378 F.3d at 548. *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *Wilson*, 378 F.3d at 548.

The Act requires the Commissioner to consider the combined effects of impairments that individually may be nonsevere but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988) (citation omitted). Disability may be established if the claimant suffers from a number of medical problems, none of which alone may be sufficiently disabling to prevent the performance of substantial gainful activity, but which taken together have that result. *See Mowery v. Heckler,* 771 F.2d 966, 971 (6th Cir. 1985). An ALJ's individual discussion of multiple impairments does not imply that the ALJ failed to consider the effect of the impairments in combination where it is clear the ALJ considered the totality of the record. *See Gooch v.*

13

*Secretary of Health and Human Services*, 833 F.2d 589, 592 (6th Cir. 1987) (fact that each

element of the record was discussed individually did not suggest the whole record was not

considered where the ALJ specifically referred to "a combination of impairments" in deciding

claimant did not meet the Listings; the ALJ specifically found claimant's "'impairments'

(plural)" did not prevent him from returning to his former work; and the ALJ stated after his

specific findings that they were made "[a]fter careful consideration of the entire record.").

   Pain alone, if the result of a medical impairment, may be severe enough to constitute

disability. *Kirk*, 667 F.2d at 538.  In order to find plaintiff disabled on the basis of pain alone, the

Commissioner must first determine whether there is objective medical evidence of an underlying

medical condition.  If there is, the Commissioner must then determine: (1) whether the objective

medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the

underlying medical impairment is severe enough that it can reasonably be expected to produce

the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir.

1986).  In addition to the objective medical evidence, the Commissioner must consider other

evidence of pain, such as statements or reports from plaintiff, plaintiff's treating physicians and

others about plaintiff's prescribed treatment, daily activities, and efforts to work, as well as

statements as to how plaintiff's pain affects his daily activities and ability to work. *Felisky v.*

*Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994) (citing 20 C.F.R. § 404.1529(a)).  Specific factors

relevant to plaintiff's allegations of pain include his daily activities; the location, duration,

frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage,

effectiveness and side effects of any medication plaintiff takes; treatment other than medication

plaintiff has received for relief of his pain; any measures plaintiff uses to relieve his pain; and

14

other factors concerning his functional limitations and restrictions due to pain. *Id.*; 20 C.F.R. §

404.1529(a). *See also* SSR 96-7p. Although plaintiff is not required to provide "objective

evidence of the pain itself" in order to establish that he is disabled, *Duncan,* 801 F.2d. at 853,

statements about his pain or other symptoms are not sufficient to prove his disability. 20 C.F.R.

§ 404.1529(a). The record must include "medical signs and laboratory findings which show that

[plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain

or other symptoms alleged and which, when considered with all of the other evidence . . . would

lead to a conclusion that [plaintiff is] disabled." *Id.*

    Where the medical evidence is consistent and supports plaintiff's complaints of the

existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits.

*King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, there is both substantially

conflicting medical evidence as well as substantial evidence supporting a finding of disability,

the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v.

Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). In either event, the ALJ must articulate, on the

record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35

F.3d at 1039-41.

    In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the

ALJ's credibility finding is entitled to deference and should not be discarded lightly.

*Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk*, 667 F.2d at 538. "If an ALJ rejects a

claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v.

Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or

rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful

appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Social Security Regulation 96-7p describes the requirements by which the ALJ must abide in rendering a credibility determination:

> It is not sufficient for the adjudicator to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

(emphasis added).

## OPINION

Plaintiff assigns two errors in this case. First, plaintiff contends that the ALJ failed to properly consider the combined effect of his impairments. Second, plaintiff argues that the ALJ erroneously discounted his complaints of pain as not credible. Plaintiff contends that as a result of these errors, the ALJ's decision that he is not disabled is not supported by substantial evidence.

The Commissioner argues that the ALJ's decision is supported by substantial evidence. The Commissioner contends that the ALJ thoroughly reviewed the record and considered the combined effect of plaintiff's impairments. The Commissioner further asserts that the ALJ reasonably determined plaintiff's complaints of debilitating pain and symptoms are not supported by the record, and the ALJ's credibility finding therefore should not be disturbed.

**I. The ALJ considered the combined effect of plaintiff's impairments**.

Plaintiff contends that the ALJ failed to properly consider the combined impact of his neck condition; his lower back condition; his knee problems; and the fact that he had received special education and could not manage his own funds. Plaintiff alleges that his neck and lower back conditions are extremely painful for him. Plaintiff claims the neck pain would limit him to handling and lifting no more than a few pounds and the lower back pain would cause him to have increased difficulty with lifting, standing and walking. Plaintiff further alleges that his knee problems would preclude him from being on his feet for the number of hours the ALJ determined he could stand. Plaintiff generally alleges that six hours of standing/walking is not consistent with a person who suffers from lower back pain and knee problems. Plaintiff points to objective findings in the record to support his complaints of pain and to show that his impairments preclude him from working.

The Court finds that there is substantial evidence in the record establishing that the ALJ considered the combined effect of plaintiff's impairments in assessing his eligibility for disability benefits. The ALJ determined that plaintiff suffers from the severe impairments of borderline intellectual functioning; dysthymic disorder; somatoform disorder; obesity; bilateral carpal tunnel syndrome and "ulnar nerve" with status post release surgery on the right; bilateral knee derangement with status post surgeries; and mild degenerative disc disease. (Tr. 12). The ALJ analyzed each of plaintiff's multiple impairments based on the entire record. (Tr. 12-19). Contrary to plaintiff's claim, the ALJ fully considered plaintiff's testimony and the physical findings relating to his knee impairments. (Tr. 15-16). The ALJ also made findings concerning whether the evidence supported any limitations from plaintiff's neck and back pain. (Tr. 16).

17

The ALJ reviewed the medical evidence and properly determined that the objective evidence showed either no abnormalities or mild degenerative findings in this area. (*Id.*). The ALJ properly rejected plaintiff's claims of severe lower back and neck pain for reasons he fully explained. (Tr. 16-17). Finally, although plaintiff claims that the ALJ erred by failing to address the fact that he "had special education" and he "could not manage his own funds" (Doc. 8 at 11), the record shows that the ALJ extensively considered the psychological evidence as to plaintiff's mental capacity and found no documentation of any significant ongoing symptoms of a significant mental disorder. (Tr. 17-19).

The ALJ's decision reflects that although he discussed plaintiff's impairments individually, he considered the combined impact of the impairments in formulating plaintiff's RFC. The ALJ concluded his analysis of the evidence of plaintiff's physical impairments by finding plaintiff's allegations of severe, chronic knee, back, neck and hand pain were not credible. (Tr. 17). The ALJ found there were no pathological clinical signs, significant medical findings, or neurological abnormalities which would show the existence of "a pattern of pain" so severe as to prevent plaintiff from engaging in work on a sustained basis. (*Id.*). The ALJ concluded by finding the "totality of the evidence" as to both plaintiff's physical and mental impairments did not support a finding of disability. (Tr. 18). It is therefore clear that in rendering his decision, the ALJ considered the entire record and took into account both the exertional and non-exertional limitations caused by plaintiff's various severe impairments. *See Gooch*, 833 F.2d at 592. Accordingly, plaintiff's first assignment of error should not be sustained.

18

**II.  The ALJ's credibility finding should not be disturbed**.

Plaintiff argues the ALJ erred by discounting his complaints of pain as not credible.

Plaintiff argues that his objectively-established arm condition, knee condition, nerve

impingement in the neck, and lower back stenosis are of such severity that they can reasonably be

expected to produce the pain he alleges.  In support of his argument, plaintiff points to

documentation from 2007 showing (1) a tear in the right knee, and (2) continued crepitus in the

left knee.  (Doc. 8 at 12, citing Tr. 220, 232).  Plaintiff also relies on subjective complaints he

reported at the ALJ hearing.  (*Id*., citing Tr. 37-38).  Further, plaintiff points to post-surgical

issues as to his arm and hand and makes subjective allegations regarding his arm/hand, neck and

back conditions and the limitations they could be expected to impose.  (Doc. 8 at 12-13).

The Court finds that the ALJ's credibility determination is supported by substantial

evidence.  The ALJ determined that plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms but found plaintiff's statements

concerning the severity and limiting effects of those symptoms were not credible.  (Tr. 15).  In

making this determination, the ALJ reasonably discounted plaintiff's credibility based on

inconsistencies in plaintiff's testimony and plaintiff's failure to obtain treatment or follow

treatment recommendations.  As the ALJ noted, records documented that plaintiff ambulates with

a normal gait subsequent to surgery on the left knee.  (*Id*.).  The ALJ further noted that despite

plaintiff's testimony that he is able to walk at a slow pace for only 2 to 2½ blocks, plaintiff does

not use an assistive device and he does not have a handicap tag for parking.  (*Id*.).  The ALJ also

found it inconsistent that plaintiff had reported in February 2007 that physical therapy had

improved his range of motion and strength in the left knee but had not helped the pain, whereas

19

plaintiff testified at the hearing that he quit participating in physical therapy because it was not helping and was causing too much pain. (*Id.*). In addition, the ALJ noted that there was documentation plaintiff could have benefitted from further stabilization exercises before he quit physical therapy. (*Id.*). The ALJ also relied on plaintiff's refusal to follow Dr. Weinsweig's recommendation that he try a pain clinic since he did not like physical therapy in discounting plaintiff's credibility. (*Id.*).

The ALJ further determined that plaintiff was not credible based on a lack of objective clinical findings regarding his several impairments. (Tr. 15-16). This finding is also substantially supported by the record. As to plaintiff's knee impairments, the ALJ noted that in August 2008, there were only minimal positive objective findings: (1) mild medial joint space loss with no other bone or joint abnormality as shown by imaging studies of both knees (Tr. 446-447), and (2) tenderness on palpation of the left knee at the joint line. (Tr. 451). The ALJ also noted that as of August 2008, clinical examination showed no effusion, no induration, no tenderness on palpation of the patellar tendon, no muscle spasm, no pain elicited by motion of the knee, no instability, and no muscle weakness. (Tr. 451).

The ALJ also properly discounted plaintiff's complaints of back pain. (Tr. 16). As the ALJ noted, despite his subjective complaints, plaintiff has never had chiropractic treatment, epidural steroid injections, oral steroids or back surgery. (Tr. 433). In addition, the record evidence shows only mild findings or normal findings on diagnostic tests. The ALJ noted that a 2006 MRI of the cervical spine showed only mild degenerative changes with no acute disc herniation (Tr. 416); a June 2007 x-ray showed no abnormalities (Tr. 263); and a June 2007 bone scan of the neck and back was essentially unremarkable. (Tr. 264). The ALJ stated that although

20

plaintiff continued to complain of low back pain in November 2008, he denied numbness, tingling or incontinence in the lower extremities (Tr. 439); his pain medication dosage was not increased (Tr. 441); and he was advised to continue with home exercises and stretching. (Tr. 441). Finally, the ALJ noted plaintiff's failure to lose a sufficient amount of weight to improve his functional status as he had repeatedly been advised. (Tr. 16, citing Tr. 433, 440-41, 455).

The ALJ also discounted plaintiff's complaints concerning his hands. (Tr. 16). The ALJ noted that plaintiff had undergone surgery for right ulnar neuropathy and carpal tunnel syndrome in August 2007 and had been discharged from physical therapy in January 2008 with substantially improved muscle strength and range of motion for the elbow and wrist. (Tr. 419-21). The ALJ stated that while nerve conduction and electromyography studies in August 2008 were consistent with a mild left carpal tunnel syndrome and a moderate left ulnar neuropathy, plaintiff refused to undergo surgery for his left hand because he reported that the surgery had not helped his right hand. (Tr. 439). The ALJ also noted that plaintiff's alleged inability to hold onto items apparently did not prevent him from taking sewer samples at his current "Work for Welfare" job. (Tr. 16).

Finally, the ALJ found plaintiff was not credible based on a lack of observable manifestations of pain, such as muscular atrophy due to muscle guarding, muscle spasms, or adverse neurological signs. (Tr. 17). The ALJ found that the record failed to demonstrate the existence of any "pathological clinical signs, significant medical findings, or any neurological abnormalities" which would demonstrate pain of such severity as to preclude plaintiff from engaging in any work on a sustained basis. (*Id.*).

21

The ALJ has articulated specific reasons for discounting plaintiff's complaints of debilitating pain, and those reasons are substantially supported by the evidence in the case record. The ALJ was entitled to discount plaintiff's credibility based on his failure to seek treatment or follow treatment recommendations. *See* 20 C.F.R. § 404.1530 (claimant is required to follow treatment prescribed by a physician if it can restore his ability to work). The ALJ could reasonably rely on plaintiff's refusal to undergo surgery to repair the tear in his right knee, his withdrawal from physical therapy, and his refusal to participate in a pain clinic to discount plaintiff's claim of debilitating knee pain. In addition, the ALJ reasonably relied on the lack of objective findings such as muscle spasm, instability, and muscle weakness to determine that plaintiff's complaints of debilitating knee pain were not credible. *See Jones v. Secretary, Health and Human Services,* 945 F.2d 1365, 1369-1370 (6th Cir. 1991) (objective medical evidence such as muscle atrophy, reduced joint motion, muscle spasms, and sensory and motor disruption are usually "reliable indicators" of intense pain). The ALJ's credibility finding is also supported by the physician's reports that plaintiff ambulated with a normal gait following surgery and plaintiff's testimony that although he can walk for only 2 to 2½ blocks, he does not use an assistive device for walking or have a handicap tag for parking. (Tr. 38, 44, 232, 234, 236).

Moreover, the ALJ properly relied on a dearth of objective findings concerning plaintiff's neck and back impairments to find that plaintiff's allegations of severe, chronic back and neck pain are not credible. Plaintiff makes only general allegations that his neck condition would limit him to "handling and lifting [] no more than a few pounds" and his back condition would cause him increased difficulty with lifting, standing and walking, without pointing to any evidence in the record which supports his claim. (Doc. 8 at 11).

22

Finally, plaintiff challenges the ALJ's credibility determination by referencing his subjective complaints regarding his hands which he made at the ALJ hearing and by pointing out that he was diagnosed with cellulitis secondary to surgery in September 2007. (Doc. 8 at 13, citing Tr. 374-376). Plaintiff also points to his participation in physical therapy in October 2007 following surgery on his elbow and wrist (*Id.*, citing Tr. 395) and his complaints of a decreased ability to grip following the surgery and at the start of his physical therapy regimen in October 2007. (*Id.*). However, issues related to plaintiff's short-term post-surgical condition and plaintiff's unsupported subjective complaints do not establish that the ALJ erred in discounting plaintiff's complaints of debilitating hand symptoms. *See* 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled . . ."). Plaintiff also alleges that he had "continued problems" despite surgery and "would have limitations in his handling, fingering and lifting due to his arm and wrist impairment." (Doc. 8 at 13). However, he cites no documentation in the record to support his claim.

To conclude, the ALJ's credibility determination is entitled to a high degree of deference by this Court and should not be discarded lightly. *See Buxton*, 246 F.3d at 773; *Kirk*, 667 F.2d at 538. In this case, the ALJ's determination that plaintiff's subjective allegations of severe and chronic knee, back, neck and hand pain are not credible and do not support his claim of disability is supported by substantial evidence. The ALJ's credibility finding should not be disturbed by this Court.

23

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the

docket of the Court.

Date: 8/4/2011

Karen L. Litkovitz
United States Magistrate Judge

24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DONALD BRUBAKER,                                    Case No. 1:10-cv-437
            Plaintiff                               Dlott, J.
                                                    Litkovitz, M.J.

        vs

COMMISSIONER OF
SOCIAL SECURITY,
            Defendant

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

25